565 P.2d 877

STATE of Arizona, Appellee,

v.

Henry MENDEZ, Jr., Appellant.

No. 1 CA–CR 1635.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 21, 1976.

Rehearing Denied Jan. 28, 1977.

Review Granted Feb. 16, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Jeffrey S. Kaufman, Phoenix, for appellant.

## OPINION

DONOFRIO, Presiding Judge.

After a trial by jury, appellant, Henry Mendez, was convicted of possession of a narcotic drug in violation of A.R.S. § 36–1002. The State alleged, and appellant admitted, that he had a prior felony conviction. He was sentenced to a term of not less than 10 nor more than 11 years in the State prison. On appeal, he contends that the trial judge erred in denying his Motion to Suppress, and allowing the admission of evidence that he was in possession of heroin when arrested by the police.

The events leading to the charges against appellant took place at a private residence on the evening of May 2, 1975. Police officers went to the residence armed with a search warrant which named Ernie Mejia and a house at 1328 East Filmore, Phoenix as the person and place to be searched for illegal possession of narcotic drugs. The search warrant described Ernie Mejia as a

"Mexican male, 19–20 years of age, and approximately 5′6″, 150 pounds, short brown Afro-style hair." Several people were present when the police officers arrived to serve the warrant, however, Ernie Mejia was not among them. Approximately five minutes after the arrival of the police, appellant arrived at the house driving a car similar to the one known to be driven by Mejia. He was accompanied by a young woman. Appellant entered the house, without knocking, whereupon the police officers immediately restrained him. He was handcuffed, patted down for weapons, asked his name and given his *MIRANDA* rights. He refused to give his name when asked directly. He was then searched and packets of heroin were found on him.

Appellant makes two arguments in support of his position that the search was illegal, mandating suppression of the fruits of such a search, i.e., the heroin. First, appellant contends the warrant did not extend itself to allow the search of a person not named therein. Second, viewed as a warrantless search, it was also invalid as failing to fall within one of the statutory provisions authorizing the search of other persons who are present during the execution of a valid search warrant. As to the first argument, we agree that the warrant itself did not constitute a valid basis for the search of appellant.

One of the detectives who participated in the warranted search for drugs, Officer Andrade, could have identified Ernie Mejia, the person named in the warrant, from the viewing of photographs of Mejia prior to the search. He did not convey his knowledge to his superior officer that the person they were restraining was not Mejia. Rather, he conducted the search of appellant, at the direction of his superior officer. Andrade testified at trial that he searched appellant upon the order of his superior and that it was his personal policy to search all persons present or arriving in the course of the execution of a search warrant. Also, Officer Andrade testified that it occurred to him that perhaps there was another person named Ernie Mejia.

We do not accept as justification for searching an individual absent other basis, any officer's personal policy or mere obedience to the orders of a superior. The Fourth Amendment requires more to show that a search was reasonable.

Officer Andrade's testimony, that he thought perhaps the man he was searching was another Ernie Mejia, was nothing more than a rationalization for his actions. His testimony at the preliminary hearing rather clearly connected the person who he knew as Ernie Mejia to be the Ernie Mejia named in the search warrant.

He testified:

"Q Prior to going to this residence, did you see any photographs of Ernie Mejia within the past, say, week or two before this warrant was served?

A Yes, I did.

Q For what purpose?

A To identify the person Ernie Mejia.

Q Did any other police officers see these photographs?

A I can't recall.

Q Is it standard procedure for as many of the officers as possible that are going to serve a search warrant to look at photos of persons suspected of being present?

A No, sir.

Q For what purpose did you look at this photo?

A I, myself, like to identify the person I go on a search warrant before I go on the search warrant.

Q So then you are telling me it's your policy to go and see the picture of who you expect to be there when you get there?

A That's my own policy."

Officer Andrade had every reason to know that the person whom he was searching was not Ernie Mejia. He should have conveyed this knowledge to his fellow officers and searched appellant only if there was some basis, independent of the search warrant, for searching him. An attempt to justify a search on the basis of a reasonable

mistake in executing the warrant is hardly convincing in view of Officer Andrade's rather clear knowledge of Mejia's identity.

However, the validity of the search of appellant does not depend upon the search warrant itself extending to a search of appellant, but the search finds validity in A.R.S. § 13–1446(E).

A.R.S. § 13–1446(E) provides:

"A peace officer executing a search warrant directing a search of premises or a vehicle may search any person therein if:
1. It is reasonably necessary to protect himself or others from the use of any weapon which may be concealed upon the person, or
2. It reasonably appears that property or items enumerated in the search warrant may be concealed upon the person." As amended Laws 1970, Ch. 59 § 4; Laws 1971, Ch. 152, § 5.

We do not believe subsection one justifies the search here because the search which produced the heroin was not conducted for the purpose of determining whether Mendez had any concealed weapons. Mendez was handcuffed almost immediately upon entering the house. He was also patted down for weapons. Only thereafter was the search which produced the heroin conducted. If security was the motive for the search, the pat down and search of the house would have accomplished the objective.

Subsection two, however, does apply to the case at bar. Appellant argues that this subsection was intended only to cover the situation in which a person is already present when police arrive to execute a warrant. Only in such a situation, appellant contends, could any property or items named in a warrant reasonably be expected to be found upon the person of someone not named in the warrant. In the usual situation we would tend to agree that a person arriving from outside a house, during the execution of a warrant, could not reasonably be expected to have contraband named in the warrant on him, or at least any connection would be speculative.

However, in this case the totality of facts indicate that the situation surrounding appellant's presence at the house was pregnant with circumstances giving rise to a reasonable belief that appellant had narcotics on his person which were the subject of the search of the house. See: *State v. Galloway*, 14 Wash.App. 200, 540 P.2d 444 (1975).

These facts, known to the police at the time, were: Appellant was a person who had been at that house just a short time before the arrival of the police; according to the persons present upon the arrival of the police, the owner of the house had just gone with an apparently unnamed man to the store for some beer; and the two were expected to return shortly. The police escorted the occupants to other rooms in the house, and they awaited the return of the two people. Thus, appellant was known to have a connection with the house, and he could not truly be described as an outsider just happening upon the scene of a search. Appellant's connection with the house, his refusal to give his name when asked directly, considered with the fact that drugs were known by the police to be possessed and sold there, and that the odor of marijuana was present when they arrived, (though apparently no marijuana cigarettes were ignited or still warm when they arrived) gave rise to the reasonableness of the search of the appellant. The appellant's connection with the house is sufficient to make applicable the provisions of A.R.S. § 13–1446(E)(2).

The motion to suppress was properly denied and we affirm appellant's judgment and sentence.

Affirmed.

OGG and NELSON, JJ., concurring.